CANON, INC., Plaintiff,

v.

COLOR IMAGING, INC.,
et al., Defendants.

CIVIL ACTION NO. 1:11–CV–3855–AT

United States District Court,
N.D. Georgia, Atlanta Division.

Filed 12/14/2016

Chitra Malini Kalyanaraman, Dennis McMahon, Erin J.D. Austin, Nicholas M. Cannella, Peter D. Shapiro, Seth Boeshore, Edmund J. Haughey, III, Michael P. Sandonato, Fitzpatrick Cella Harper & Scinto, Audra Ann Dial, George L. Murphy, Jr., Kilpatrick Townsend & Stockton, LLP, for Plaintiff(s).

Harral Straat Tenney, IV, Joseph Anthony Farco, Rory Jeffrey Radding, Bryan Guy Harrison, Tingkang Xia, Locke Lord LLP, for Defendant(s).

### ORDER

Amy Totenberg, United States District Judge

This matter is before the Court on Plaintiff's five motions in limine [Doc. 483]. Plaintiff seeks to exclude (1) arguments or evidence of the patent or patent application belonging to Defendant General Plastic Industrial Co., Ltd. ("GPI") and allegedly covering the accused toner bottles, including U.S. Patent No. 8,422,910 ("the '910 patent"); (2) arguments or evidence of either Defendant seeking legal advice, or of either Defendant's communications with legal counsel, relating to the accused products or '910 patent, and of GPI's consideration of a Chinese translation of claims within U.S. Patent No. 7,647,012 ("the '012 patent"); (3) arguments or evidence regarding the "radially inward" non-infringement theory; (4) arguments or evidence regarding the "free end" non-infringement theory; and (5) Dr. Springett's expert testimony on the ulti-mate conclusions of exhaustion, implied license, and repair. The Court addresses each of these motions in limine below.

## I. Discussion of Plaintiff's Motions in Limine

### A. Arguments or Evidence of GPI's Patent or Patent Application Allegedly Covering the Accused Toner Bottles

■ Plaintiff seeks to prevent Defendants from introducing arguments or evidence of any GPI patent or patent application, including the '910 patent, that allegedly covers the accused toner bottles. Plaintiff contends that such arguments or evidence are irrelevant and likely to mislead the jury because the existence of Defendants' own patent has no bearing on whether Defendants literally infringed Plaintiff's patent. Plaintiff also contends that Defendants' patent is irrelevant to the issue of willfulness, because Defendants' patent issued after they had already been engaging in infringing activities. In addition, Plaintiff states that Defendants have shown no evidence of what the '910 patent actually covers, and that Defendants have failed to timely disclose their intent to rely on such evidence to rebut Plaintiff's indirect infringement and willfulness claims.

Defendants counter that they are not introducing the '910 patent to show lack of literal infringement of the '012 patent. Rather, they are introducing it to show Defendants' lack of willful infringement—in particular, that GPI has a corporate culture of innovation. (Defs.' Opposition, at 2–4.) Defendants also counter that Plaintiff knew about the '910 patent for years and Defendants' introduction of it now is harmless. (*Id.* at 7–12.)

■ The Court agrees with Defendants that evidence of the '910 patent and patent application could potentially be rel-

evant to the issue of willful infringement of the '012 patent. *See Abbott Point of Care, Inc. v. Epocal, Inc.*, 868 F.Supp.2d 1310, 1328 (N.D. Ala. 2012) (finding that although a defendant's own patent cannot be a defense to patent infringement, it is relevant to claims of willfulness) (citing to *King Instrument Corp. v. Otari Corp.*, 767 F.2d 853, 867 (Fed. Cir. 1985) (abrogated on other grounds)). "[T]here cannot be hard and fast *per se* rules" in the willfulness context. *Rolls–Royce Ltd. v. GTE Valeron Corp.*, 800 F.2d 1101, 1110 (Fed. Cir. 1986). Willfulness is a particularly fact-based inquiry, where a court must consider the "totality of the circumstances" in making a determination. *King Instrument Corp. v. Otari Corp.*, 767 F.2d 853, 860 (Fed. Cir. 1985) (abrogated on other grounds); *Gustafson, Inc. v. Intersystems Indus. Prod., Inc.*, 897 F.2d 508, 510 (Fed. Cir. 1990). Courts have considered several factors in determining whether infringement was willful, including whether the alleged infringer reasonably believed its activities were patentably distinct, whether the alleged infringer attempted to design around the patent, and whether the alleged infringer mounted good faith, nonfrivolous defenses to the existence of infringement. *See, e.g., Rolls–Royce*, 800 F.2d at 1110; *King Instrument Corp.*, 767 F.2d at 867; *Union Carbide Corp. v. Tarancon Corp.*, 742 F.Supp. 1565, 1577 (N.D. Ga. 1990).

Plaintiff argues, based on *Rolls–Royce Ltd. v. GTE Valeron Corp.*, that the '910 patent evidence is per se not probative of willfulness because the '910 patent issued *after* Defendants' infringing activities. 800 F.2d at 1110 n.9. In *Rolls–Royce*, the Federal Circuit reviewed a district court's finding that the defendant GTE had not willfully infringed the plaintiff's patent based on evidence showing the defendant tried to design around the patent and did not intentionally copy the patent. *Id.* at 1110. The Federal Circuit upheld the dis-

trict court's decision, stating that "the intent-implicating question such as willfulness[ ] is peculiarly within the province of the fact finder that observed the witnesses," and it was not error for the district court to find no willfulness based on all the evidence before it. *Id.* In reaching this decision, the Federal Circuit acknowledged in a footnote GTE's argument that the district court could have inferred that GTE reasonably believed it was not infringing because of its own separate patent on the accused device. *Id.* at n.9. The Federal Circuit rejected this argument, on the grounds that GTE's own patent did not issue until nearly two years after its infringing activities began. *Id.* Plaintiff points to this case as holding that a defendant's own patent is irrelevant to willfulness if the patent issued after the defendant's infringing activities.

However, the Federal Circuit in *Rolls–Royce* did not establish a firm rule when it addressed GTE's argument about its own patent, especially in light of its statement that there are no "hard and fast *per se* rules" in the willfulness context. *Id.* The Federal Circuit emphasized it was not its place to reweigh the evidence presented to the district court. It stated that the district court must make a case-by-case determination, "considering the evidence before it and the testimony and demeanor of the witnesses," as to whether the accused infringer acted willfully. *Id.* While the Federal Circuit rejected GTE's argument about possible inferences from its own patent—based on the fact that GTE obtained the patent almost two years after the infringing conduct at issue—this was solely an evidentiary footnote to the Federal Circuit's decision. The Federal Circuit concluded that the totality of the evidence actually established that GTE did *not* engage in willful infringement.

Defendants' argument as to the '910 patent's relevance differs somewhat from the argument made in *Rolls–Royce*. Defendants assert that their development of the '910 patent, in combination with other evidence of their overall business focus on technology and patent development, will demonstrate GPI's *general* corporate culture as an innovator and refute Plaintiff's contention that GPI is a rank patent "pirate." (Doc. 499–1, at 2–3.) Thus, they argue this evidence helps to show that GPI does not operate to intentionally infringe patents to steal away business, but it applies for its own patents on the products it develops as a general innovative business practice. (*Id.*) *Compare State Industries, Inc. v. A.O. Smith Corp.*, 751 F.2d 1226, 1236 (Fed. Cir. 1985) ("Conduct such as Smith's, involving keeping track of a competitor's products and designing new and possibly better or cheaper functional equivalents is the stuff of which competition is made and is supposed to benefit the consumer. One of the benefits of a patent system is its so-called 'negative incentive' to 'design around' a competitor's products, even when they are patented, thus bringing a steady flow of innovations to the marketplace. It should not be discouraged by punitive damage awards except in cases where conduct is so obnoxious as clearly to call for them."). If properly curtailed, testimony concerning the '910 patent and patent application might in combination with other evidence be probative of Defendants' lack of willfulness, though the Court recognizes that introduction of any testimony concerning the '910 patent may involve a slippery slope.

The question, then, is whether Defendants really are capable of properly curtailing their elicitation of evidence as to the '910 patent. The Court is tentatively prepared to allow Defendants to briefly elicit testimony regarding the existence of the '910 patent and patent application development in the context of testimony concerning Defendants' general corporate culture and practices and how that may bear factually on the issue of willfulness. However, Defendants may not enter the actual '910 patent or patent application into evidence, as this could easily confuse the jury by implying that the '910 patent by itself negated Defendants' liability for any infringement of Canon's '012 patent. Evidence of the '910 patent and patent application is *not* relevant to a determination of whether or not Defendants infringed the '012 patent. *Sanitary Refrigerator Co. v. Winters*, 280 U.S. 30, 43, 50 S.Ct. 9, 74 L.Ed. 147 (1929). Thus, Defendants may not argue or elicit any testimony that suggests that the '910 patent may be considered by the jury relative to proof of infringement or non-infringement. Nor will the Court permit Defendants' counsel to make any reference or argument in opening or closing remarks specifically about the '910 patent. Additionally, Defendants will be required at the pretrial conference to preview for the Court the precise testimony regarding the '910 patent they intend to present.

While allowing this evidence theoretically has the potential to confuse the jury, the Court finds that this risk is outweighed by the probative value of Defendants' corporate culture evidence relative to the issue of willfulness, if properly contained. Moreover, the Court can reduce such risk with a clear limiting instruction. *Abbott Point of Care, Inc.*, 868 F.Supp.2d at 1329. In the event the Court finds at the pretrial conference or at trial that the '910 testimony carries an excessive risk of confusing the jury, the Court will disallow or strike it. Plaintiff may also object to this evidence at trial if it exceeds the parameters set here or if it is presented in a confusing manner. All that said, the Court concludes this discussion by noting that Defendants might far more safely and reli-

ably proceed by omitting all specific reference to the '910 patent and instead, elicit evidence concerning the subject matter range of patents they have developed and reference that range more generically (including policies or procedures for developing design-around products). Assuming such testimony was properly presented and framed, the Court would likely also allow appropriate counsel's argument to the jury concerning the evidence as it pertains to willfulness.

For these reasons, the Court **GRANTS IN PART AND DENIES IN PART** Plaintiff's First Motion in Limine [Doc. 483, Section I], subject to the exacting limitations identified here.[1]

**B. Arguments or Evidence of Legal Advice to Defendants About the Accused Products, and of the Chinese Translation**

██ Plaintiff's Second Motion in Limine [Doc. 483, Section II] seeks to exclude arguments or evidence of Defendants' communications with legal counsel regarding the '012 patent or accused products, as well as Defendants seeking legal advice regarding the '012 patent or accused products, as they relate to Defendants' state of mind for indirect or willful infringement. Plaintiff also seeks to exclude arguments or evidence of Defendants considering a Chinese translation of the '012 patent as it relates to Defendants' state of mind.

Defendants respond that Plaintiff's Motion is overly broad in trying to exclude all references to legal advice or communication, including "any mention that GPI patents its design-around products or even consults with attorneys to get such patents." (Defs.' Opposition, at 18.) Defendants argue that their state of mind is relevant to their defenses, and they may properly use evidence of legal advice or communication to the extent that it shows their business practices *before* the issuance of the '012 patent. They recognize that they may not use such evidence to the extent that it shows they relied on legal advice about the '012 patent and therefore did not willfully infringe the patent. (*Id.* at 19.)

First, because Defendants have not opposed Plaintiff's Motion to exclude the Chinese translation, Plaintiff's Second Motion in Limine [Doc. 483, Section II] is **GRANTED** with respect to the Chinese translation.

██ Second, the Court finds that Defendants may be able to introduce evidence (or arguments) for the narrow purpose of explaining their general business practices in creating design-around products and obtaining patents for them, but *not* for any purpose related to their specific actions in this case or with respect to the '012 patent. That said, Defendants' introduction of such testimony may come precariously close to waiving the attorney-client privilege as to the patent issues in this case. Under Eleventh Circuit precedent, a litigant may implicitly waive the attorney-client privilege when the client injects the issue of advice of counsel by providing testimony that his actions at issue in the litigation were based on the advice or knowledge imparted by his attorney. *Cox v. Administrator U.S. Steel & Carnegie*, 17 F.3d 1386, 1417–19 (11th Cir. 1994). In other words, a party cannot unfairly use advice of counsel as both a sword (as an affirmative defense) and as a shield from disclosure of attorney-client communications. *Id.* Thus, in *Cox*, the corporate defendant "could have denied criminal intent without affirmatively asserting that its change of the pension fund at issue in the litigation was legal."

---

1. This Order modifies and supersedes the Court's oral order on this motion that was announced in open court at the pretrial hearing on November 29, 2016.

*Id.* at 1419 (holding that the corporate defendant waived the attorney-client privilege in the context of a labor-relations racketeering case, when it argued in defense that it believed its pension fund policy change was legal and therefore it had not acted "willfully" as set forth in the criminal statute).

Still, Defendants do not waive the attorney-client privilege solely by presenting evidence regarding how they manage and structure their business overall and that their regular business or management process includes the consultation with counsel about an array of topics, including patents. Narrowly tailored evidence about such general business practices does not alone inject into the case an affirmative defense that the Defendants relied on advice from counsel in their alleged infringing actions in connection with Canon's '012 patent. However, this might prove a tenuous tightrope to walk in practice. Defendants may not elicit testimony, evidence, or argument that suggests in any manner that their actions in connection with the '012 patent were based on consultations with counsel or information provided by counsel without waiving the attorney-client privilege as relevant communications. Similarly, Defendants may not provide testimony or argument that suggests or implies they thought their challenged infringing actions were legal based on knowledge gleaned from their general or overall consultations with counsel, without waiving the privilege as to the relevant attorney-client communications. *Id.* If Defendants stray into evidence, inquiries, or argument beyond the general business practices type of evidence authorized in this Order, they are likely to fall off the tight rope. Plaintiff may then move to strike the evidence or argument or seek disclosure of the attorney-client communications placed at issue. Thus, the Court will not allow Defendants to continue to assert attorney-client privilege as to relevant communications if they also attempt to inject as a defense their own knowledge of the law or view of the legality of their actions in connection with the '012 patent at issue.

In summary, the Court **GRANTS IN PART AND DENIES IN PART** Plaintiff's Second Motion in Limine [Doc. 483, Section II], as discussed above.

## C. Arguments or Evidence of Type B Toner Bottles Not Infringing Because Their Engaging Portions Do Not Move "Radially Inward"

█ Plaintiff moves to exclude arguments or evidence of Defendants' theory that the Type B toner bottles do not infringe because their engaging portions do not move "radially inwardly" as required by Claim 24 in the '012 patent. Plaintiff contends that this issue was already addressed during claim construction: the Special Master rejected Defendants' narrower construction of Claim 24, but Defendants now try to argue this same narrower construction again. Plaintiff further contends that courts routinely prohibit experts from testifying contrary to claim construction orders, so Defendants' expert Dr. Springett should be prohibited from testifying on the "radially inward" noninfringement theory.

Defendants respond by stating that Dr. Springett's testimony is different from the construction of Claim 24 that they advocated for during claim construction, and therefore Dr. Springett's testimony is not precluded by the Special Master's construction. Rather, they state that Dr. Springett's testimony is consistent with the Special Master's construction, since the '012 patent's embodiments show the engaging portion moving "radially inwardly." Defendants also contend that Plaintiff's argument during claim construction, which stated that claim differentiation prohibits Defendants' narrower construction, is incorrect. Specifically, the doctrine of

claim differentiation presumes that at least one limitation differs between two claims. As Claims 1 and 24 already have at least one limitation that differs (other than Claim 1 including "radially inward" language that Claim 24 does not include), no presumption arises that Claim 24 should be interpreted without the "radially inward" language.

The Court agrees with Plaintiff that the issue of how to construe the language "in an inward direction" in Claim 24 was already decided by the Court during claim construction. The Court rejected a different, but closely associated, proposed construction that Defendants present here through Dr. Springett. During claim construction, both Plaintiff and Defendants addressed what the proper construction should be for this language in Claim 24: "configured and positioned to (a) displace in an inward direction with said supporting portion as said engaging portion enters the hollow cylindrical driving member . . . ." Plaintiff argued that the language be given its plain meaning. Defendants argued for an alternate construction of this language, requiring that "the hollow cylindrical driving member presses the engaging portion in a direction from the point of pressing to a point on the container body axis, a line defined by the two points being perpendicular to the axis . . . ." In response, Plaintiff stated that Defendants' alternate construction was too narrow. Plaintiff explained that that the language "inward direction" in Claim 24

has a broader meaning than language in other claims of the patent, such as "substantially radially inwardly" in Claim 1. Because "inward direction" in Claim 24 lacks the modifier "substantially radially" in Claim 1, Plaintiff reasoned that "inward direction" has a broader meaning than "substantially radially inwardly." The Special Master rejected Defendants' alternate construction and gave the language in Claim 24 its plain meaning, stating that Plaintiff provided "numerous other meritorious reasons for rejecting Defendants' construction." (Doc. 168, at 108.) The Court adopted the Special Master's recommendation in this regard.

Defendants' alternate construction during claim construction is essentially the same as Dr. Springett's "radially inward" theory. Both interpret Claim 24 as requiring the engaging portion to move inward *toward a point on the axis*, as opposed to just moving "inward." [2] The Special Master rejected Defendants' narrower alternate construction, and the Court finds that the Special Master's construction is still the correct one. In essence, the plain meaning of "inward" in Claim 24 is simply "inward," not "radially inward."

■ Dr. Springett's "radially inward" theory is therefore not fully consistent with the construction of Claim 24. The Court may properly exclude expert testimony and any other evidence contrary to its prior claim construction order. *See Finjan, Inc. v. Secure Computing Corp.*, 626

2. Defendants contend that Dr. Springett's theory of Claim 24 requiring the engaging portion to move "radially inward" is different from their prior alternate construction. Specifically, Defendants state that the prior construction required movement in a perpendicular line to the axis (which Plaintiff pointed out was a physical impossibility, since the engaging portion must move in an arc), and Dr. Springett's description requires movement toward the axis that is *not* in a perpendicular line. However, both of these constructions describe essentially the same movement: the engaging portion moving *toward the axis of the container*. The only reason these constructions are different is because Defendants' prior construction was erroneously based on a physical impossibility; when corrected in Dr. Springett's report, the new construction describes the same concept of moving toward the axis.

F.3d 1197, 1207 (Fed. Cir. 2010); *Coca–Cola Co. v. Pepsico, Inc.*, Civil Action No. 1:02-CV-2887-RWS, 2005 WL 5974444, at *1 (N.D Ga. Mar. 17, 2005). This is particularly important because the Court cannot allow parties to argue different claim constructions to the jury, such as whether Claim 24 requires movement that is "radially inward" or simply "inward." *See O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1362 (Fed. Cir. 2008). For these reasons, the Court **GRANTS** Plaintiff's Third Motion in Limine [Doc. 483, Section III] and excludes arguments or evidence regarding the theory that Type 2 bottles do not infringe because their engaging portions do not move "radially inward."

### D. Arguments or Evidence of the "Free End" Non–Infringement Theory

■ Plaintiff moves to exclude arguments or evidence regarding Defendants' "free end" non-infringement theory, which Defendants first introduced in their outline of the case as part of the Joint Pretrial Order. Plaintiff contends that Defendants failed to comply with Fed. R. Civ. P. 26(e), since they did not supplement their discovery responses or non-infringement contentions with this new theory, nor did they supplement their expert reports with this new theory. They also did not introduce this theory during claim construction or supplement their non-infringement contentions following claim construction, as required by Patent Local Rule 4.5. As a result, Plaintiff further contends that Fed. R. Civ. P. 37(c)(1) bars Defendants from introducing this evidence at trial, because Defendants' failure to supplement this information is not substantially justified or harmless. Allowing Defendants to introduce this evidence would also undermine the purpose of the Patent Local Rules, which call for the orderly disclosure of infringement contentions and non-infringe-

ment contentions, then claim construction, and then expert reports and depositions.

Defendants respond that district courts may engage in rolling claim construction, where they revisit and alter their interpretations of claim terms as their understanding of the technology evolves. *See, e.g., Pressure Prod. Med. Supplies, Inc. v. Greatbatch Ltd.*, 599 F.3d 1308, 1316 (Fed. Cir. 2010). In particular, Defendants state that Plaintiff's construction of the term "free end" (which is stated in Claim 24 as "an engaging portion provided at a free end of said supporting portion") is incorrect. Defendants construe "free end" as the very tip of the resilient beam on the sealing member. In this way, Defendants argue that the "duckbill end" of their Type B bottle forms the free end of the supporting portion, and therefore it cannot also meet the limitation of the engaging portion. (Doc. 468–4 at 5.) Plaintiff construes "free end" as the area where the supporting portion ends and where the engaging portion begins, with "free" really meaning that it's the part of the supporting portion that is elastically displaceable instead of fixed in place. Plaintiff's construction would mean that the duckbill end of Defendants' Type B bottles would still be considered an engaging portion, and therefore Type B bottles would still be subject to the engaging portion limitation. Defendants contend that the construction of "free end" is ambiguous, such that it warrants additional claim construction by the Court.

The Court finds that the term "free end" does not require construction because its meaning is clear in the context of the '012 patent claims and will be readily understandable by the jury. The term has a plain and ordinary meaning: "free end" is describing the part of the supporting portion that is elastically displaceable and not fixed in place. Though the Court does not

construe the term "free end," the parties may not interpret the term in a manner inconsistent with this opinion at trial.

Furthermore, Defendants have not shown that they are entitled under Rule 37(c)(1) to introduce this new theory at trial. Rule 37(c)(1) states that a party is not allowed to use information at trial that it failed to provide earlier as required by Rule 26(e), unless that failure is substantially justified or harmless. Rule 26(e) requires a party to supplement its discovery responses (i.e., responses to interrogatories, requests for production, or requests for admission) in a timely manner when it learns of additional or corrective information. It also requires a party to supplement an expert witness's report when there are changes or additions to the information included in the report or in the expert's deposition. Similarly, Patent Local Rule 4.5 states that each party's infringement contentions or responses "shall be supplemented or amended pursuant to the rules for supplementation and amendment of discovery responses generally provided for under the Federal Rules of Civil Procedure."

First, Defendants did not comply with Rule 26(e) with respect to their discovery responses or their expert reports, and they did not comply with Patent Local Rule 4.5 with respect to their non-infringement contentions.[3] In particular, where Plaintiff's interrogatories had asked Defendants to identify all of their defenses and describe the facts supporting such defenses, Defendants did not supplement their earlier interrogatory responses to include the "free end" theory. (*See, e.g.,* Doc. 483–13, at 15; Doc. 483–23, at 17–19.) Defendants also did not supplement Dr. Springett's expert reports to include this theory, since Dr. Springett does not mention the "free end" theory in any of his reports or his deposition. Nor did Defendants supplement their non-infringement contentions with this new theory, either leading up to or following claim construction in 2012. (*See, e.g.,* Doc. 483–39, at 25–26; Doc. 483–40, at 24–25.)

Second, under Rule 37(c)(1), Defendants have not shown that their failure to supplement this information under Rule 26(e) is substantially justified or harmless. The Court asked Defendants during the pretrial conference why they waited until the Joint Pretrial Order to disclose the "free end" theory, and Defendants responded that it was because of the deposition of Plaintiff's expert Dr. Sturges. Defendants stated that there was substantial discussion during Dr. Sturges' deposition about where the "free end" was actually located on the sealing member. (Transcript of pretrial conference on Nov. 29, 2016, at 87–89.) While this is true, Dr. Sturges' deposition took place over one-and-a-half years ago on February 27, 2015. Defendants did not raise this new theory until submitting their summary of the case in the Joint Pretrial Order on October 11, 2016, over seven months later. Under Rule 37(c)(1), Defendants have not shown any reason why their failure to supplement their discovery responses, non-infringement contentions, and expert reports during this

---

**3.** In the Joint Pretrial Order, Defendants' discussion of the "free end" non-infringement theory contrasts with their discussion of the implied license defense (which is discussed *infra* in Section E). Defendants introduced the "free end" theory essentially out of thin air, since this theory had not been raised or hinted at during either discovery or claim construction. Yet with the implied license defense, the parties were aware of and had discussed the facts relevant to this defense during discovery. For example, Dr. Springett testified during his deposition about the customer manuals for Canon copiers and the lack of restrictions on customers' replacement of toner bottles. In this way, the implied license defense was a foreseeable argument compared to the "free end" theory.

seven-month period was substantially justified or harmless.

Therefore, the Court **GRANTS** Plaintiff's Fourth Motion in Limine [Doc. 483, Section IV] to prohibit Defendants from introducing arguments or evidence that interpret the term "free end" inconsistently with this Order.

**E. Dr. Springett's Testimony About the Ultimate Conclusions of Exhaustion, Implied License, and Repair**

Plaintiff moves to preclude Dr. Springett from testifying on the ultimate conclusions of exhaustion, implied license, and repair.[4] Dr. Springett concluded in his report that "the doctrines of Patent Exhaustion and Repair terminate Canon's patent rights as to end users." (Doc. 511–5 at 6.) First, Plaintiff contends that this testimony is misleading and unreliable because Dr. Springett did not consider a key legal element in his analysis of exhaustion and repair doctrines: whether there are any reasonable non-infringing uses of Canon copiers, specifically the Katun bottles. Proving repair also hinges on proving exhaustion. Because Dr. Springett's report is missing this key element in his analysis, Plaintiff states that his conclusions on exhaustion and repair should be excluded as unreliable and unhelpful to the jury. Second, Plaintiff contends that Dr. Springett disclosed no opinion on the implied license doctrine (which also includes "no reasonable non-infringing uses" as an element), so any testimony about implied license should also be excluded.

Defendants argue that exclusion of this evidence would be improper for several reasons. First, Dr. Springett did not opine on one of the elements of exhaustion (i.e., here, whether the Katun bottles are reasonable non-infringing uses) because Plaintiff had conceded earlier in admissions that the Katun bottles were not competitive with or acceptable alternatives to the Canon bottles. Defendants contend that this was an undisputed fact, so there was no reason for Dr. Springett to opine on it. Second, Defendants construe the question of whether Katun bottles are acceptable alternatives to the Canon bottles as a factual question, which goes to the credibility of testimony and not its admissibility. Third, Defendants contend that Dr. Springett's testimony would be helpful to the jury regarding whether Plaintiff's copiers embody "essential features" of the '012 patent (another element of the exhaustion test), which Plaintiff conceded that Dr. Springett had analyzed in his report. Finally, during the pretrial conference, Defendants stated Dr. Springett would testify that he has no opinion on the element of non-infringing uses, including non-infringing uses of Katun products. In this way, Dr. Springett would acknowledge all relevant legal criteria for exhaustion before offering his ultimate conclusion.

**a. Exhaustion and Repair Defenses**

 Plaintiff does not provide a sufficient basis for excluding Dr. Springett's testimony on the ultimate conclusions of exhaustion and repair. Fed. R. Evid. 702 requires that an expert's testimony be helpful to the trier of fact in determining a fact at issue, based on sufficient facts or data, the product of reliable principles and methods, and also that the expert has reliably applied these principles and methods to the facts. An expert opinion is properly excluded if it does not meet these requirements, or if it is phrased in terms of inadequately explored legal criteria. Fed. R. Evid. 704 advisory committee's notes to

---

4. As an initial matter, the Court stated at the pretrial conference that both parties filed motions in limine regarding expert witnesses that were dangerously close to being untimely

*Daubert* motions (unless excused by the Court). The Court nonetheless stated it would address the parties' respective motions.

1984 proposed rule. Plaintiff claims that Dr. Springett should be precluded from testifying on the ultimate conclusions of exhaustion and repair because his analysis is unhelpful to the jury and does not adequately explore the legal criteria (specifically, any reasonable non-infringing uses of Canon copiers).

The Court agrees with Defendants that Dr. Springett's testimony on exhaustion and repair may be helpful to the jury. He addresses whether the Canon copier embodies essential features of the '012 patent, which is one of the elements of the exhaustion test that the jury must apply. Though Dr. Springett did not opine on another element of exhaustion in his report—any reasonable non-infringing uses of Canon copiers—before stating his ultimate conclusions on exhaustion and repair, this does not automatically make the report unhelpful or unreliable. Moreover, Defendants do not contend that Dr. Springett misstated the legal standard for exhaustion in his report. Defendants have represented to the Court that when Dr. Springett testifies at trial, he will state the key elements of exhaustion at issue and simply say that he has no opinion on the non-infringing use element. Specifically, he will state that he assumed Plaintiff had admitted the Katun bottles were not a reasonable non-infringing use of Canon copiers. Plaintiff is then free to challenge the basis for Dr. Springett's conclusions when cross-examining him, including whether or not he assumed there were no reasonable non-infringing uses based on Plaintiff's earlier admission or other evidence.

### b. Implied License Defense

 Plaintiff is correct that Dr. Springett offers no opinion on the implied license defense in his report. However, Defendants' failure to include the implied license defense in Dr. Springett's report

is harmless under Fed. R. Civ. P. 37(c)(1). It is harmless for several reasons. First, Plaintiff is clearly on notice of the implied license issue presented in this case and has not been sandbagged by evidence relating to the defense.[5] Second, the implied license defense is closely related to Defendants' other exhaustion and repair defenses, which Dr. Springett's Expert Report addresses. And third, Dr. Springett's report discussed the factual circumstances that support an implied license defense, even if it did not reference the defense explicitly by its legal name.

Defendants' three defenses are closely related because they share legal elements as well as relevant facts. For instance, the repair defense hinges on a finding of exhaustion. *Fuji Photo Film Co. v. Int'l Trade Comm'n*, 474 F.3d 1281, 1293 (Fed. Cir. 2007). Both the exhaustion and implied license defenses also share a common element: they require Defendants to show that Plaintiff sold Canon copiers that had no reasonable non-infringing uses except in combination with the '012 patented toner bottles. The only difference between exhaustion and implied license is that each has an additional element. In this case, exhaustion requires Defendants to show that Canon copiers substantially embody essential inventive features of the '012 patent, such that "the only step necessary to practice the ['012] patent is the . . . addition of standard [toner bottles]." *Quanta Computer, Inc. v. LG Elecs., Inc.*, 553 U.S. 617, 633, 638, 128 S.Ct. 2109, 170 L.Ed.2d 996 (2008); *see also Aro Mfg. Co. v. Convertible Top Replacement Co.*, 365 U.S. 336, 344–345, 81 S.Ct. 599, 5 L.Ed.2d 592 (1961) (discussing combination patents). In contrast, implied license requires Defendants to show circumstances of the sale of Canon copiers that plainly indicate that

---

**5.** *See* Court's Order of July 8, 2014. (Doc. 272, at 2.)

the grant of a license should be inferred (e.g., restrictions on customers' use of the Canon copier or replacement of its parts). *Anton/Bauer, Inc. v. PAG, Ltd.*, 329 F.3d 1343, 1350 (Fed. Cir. 2003).

Second, Dr. Springett's expert report presented analysis of the patent language and factual circumstances regarding Canon's usage instructions as to the copier and toner cartridge replacement that support an implied license defense. As discussed above, the implied license defense has two elements: the absence of reasonable non-infringing uses of the Canon copiers except in combination with Canon's own toner cartridges, and circumstances surrounding the sale of Canon copiers that indicate an implied license. Defendants have represented that Dr. Springett will testify at trial that he did not opine on the "no reasonable non-infringing uses" element, though he did rely on Canon's admission as to this issue. This leaves the "circumstances surrounding the sale" element, and Dr. Springett has already discussed such circumstances in his report. Though Dr. Springett discussed these circumstances in the context of the repair defense, the same factual circumstances are also relevant to the implied license defense. Specifically, Dr. Springett points to portions of the customer manuals that direct customers to replace toner cartridges and provide them with step-by-step instructions on how to do so.[6] (Doc. 511–5, at 30–33.) Defendants argue that these circumstances support an implied license defense, given that the customer manuals show that Canon does not impose restrictions on customers' use of aftermarket toner cartridges and in fact instructs customers on how to replace the cartridges themselves. (Doc. 468–4, at 16.)

The Court agrees with Defendants that these facts support an implied license defense as well as a repair defense. Given the close relationship of these three defenses and the similar facts at issue, Plaintiff is not prejudiced by Dr. Springett testifying about implied license.

However, to ensure that Plaintiff is not prejudicially surprised at trial by the precise scope of Dr. Springett's implied license testimony, the Court **DIRECTS** Defendants to amend Dr. Springett's report to address the implied license defense, assuming he will testify concerning the defense. The amended report shall be filed no later than January 24, 2016. If Dr. Springett's report is amended, the Court authorizes Plaintiff to depose Dr. Springett on this topic, provided the deposition is conducted no later than February 28, 2016, focuses solely on implied license, and does not exceed one hour.

For these reasons, the Court **DENIES** Plaintiff's Fifth Motion in Limine [Doc. 483, Section V] to exclude Dr. Springett's testimony on the ultimate conclusions of exhaustion, repair, and implied license.

**IT IS SO ORDERED** this 14th day of December, 2016.

---

6. Dr. Springett's report also discusses the Canon user manual instructions in connection with the language of the '012 patent. (Doc. 511–5, at 31.)